Case number 15-4230, NetJets, Inc. et al. v. IntelliJet Group, LLC. Argument not to exceed 15 minutes per side. Ms. Marsh, you may proceed for the appellants. May it please the Court, my name is Beverly Marsh and I am counsel for Plaintiffs' Appellants, Columbia Insurance Company, and NetJets, Inc. I would like to address three issues today. First, the cancellation of the registration on the grounds of void ab initio. Second, the District Court's disregard of service mark rights at common law in the IntelliJet mark. And third, the District Court's finding of no likelihood of confusion. Regarding void ab initio and a set forth in the letter brief that we submitted to the panel on Monday, the Supreme Court makes it clear that a court cannot cancel a trademark registration that is more than five years old except for those grounds that are specifically set forth in 1064. As set forth in Park & Sly, this is without regard to the registration's incontestable status. 1064 includes no language about void ab initio anywhere. There are certain allowed grounds set forth for registrations that are more than five years old and they include genericness, functionality, abandonment, and other topics that are not at issue in this appeal. As we set forth in our letter brief, the mandate of 1064 has been recognized by the TTAB and it's also been recognized by other circuit courts. Counsel, this is Judge Strange. Help me. I understand how your argument is proceeding. Could you give me an eagle eye view of the relationship between incontestability and the limits of 1064? Just in general, how you think those two interrelate. Yes, Your Honor. Incontestability is a vehicle under which someone can provide a higher burden of proof to either show a defect or a defense in a registration. Section 1115 sets forth those ways in which someone can attack an incontestable registration. 1115 pertains to enforceability of a registration, so an incontestable registration. 1064 regards cancellation of registrations. A defendant in a trademark case might say that someone's incontestable mark shouldn't be able to be enforced against them and cite to a grounds in 1115. But when it comes to the defendant seeking cancellation of that mark, they have to go to section 1064 and find a grounds there. I would point out that a district court does not cancel a registration. A district court orders the cancellation of a registration by the TTAB. And so that's also at play and why there's a distinction between what 1115 is targeted towards doing versus 1064. How do you respond to the Fourth Circuit's analysis in Brittingham? Doesn't that indicate that federal courts do in fact examine incontestability status that has been granted even where the registrant complied with the requirement of 1065? How do those two fit? Well, in the Brittingham case, the Fourth Circuit stripped incontestability from the registration issue and then proceeded to establish that the owner of the mark was not proper. However, the Brittingham court recognized that the mark was actually canceled under 1064.3. So they still found a grounds in 1064.3 under which to cancel that mark. Counsel, this is Judge Sutton. In this case, going back to Judge Stranch's question and trying to figure out the stakes of the incontestability debate, it seems like you have registration and then you have this elevation to incontestability. But when you go to the likelihood of confusion issue, the only real role for this is that at least in our circuit, it means it's a strong mark once you establish incontestability. But after that, it's not obvious what role the incontestability finding has in this case. Am I right about that? Yes, Your Honor. When it comes to the Frisch's factors, incontestability does support the strength of that analysis. It does not have as much of an impact on the other factors to be considered. So in this case, our arguments about incontestability are focusing on the defendant's claim to cancel our mark as well as to defend against an assertion of infringement of our mark. This is Judge Sutton again, but assuming you're right about your threshold argument that the void ab initio argument by IntelliJet is not available here given the language of 1064, then the only reason to fight about incontestability is the extent to which it affects the likelihood of confusion analysis. Am I right about that? Well, yes. I agree that incontestability doesn't affect our analysis under 1064. The registration is more than five years old, and it doesn't matter whether it's incontestable or not. If the defendant can't provide a grounds that's set forth in 1064, the mark can't be canceled. So I agree that that issue should be put to bed and the district court's decision to cancel the registration should be reversed and that we should move on to discuss the other issues in the case, including likelihood of confusion. Well, on likelihood of confusion, this is Judge Sutton again. I take it if the court decides, as the district court did, that this was not a service mark, then the relevant question is whether NetJet is licensing or selling the computer software. That's the relevant market, not the shares for Jet services. Do you agree with that or disagree with that? I mean, I know it's not a friend's question. It's assuming something you don't like, but just assume for the sake of argument, we agree with the district court that it's not a service mark. Well, we believe that even outside of a service mark analysis that there is a likelihood of confusion. I understand that, but I'm trying to figure out what the relevant market comparison is, and I'm saying if it's not a service mark, doesn't that prove all we're looking at is what NetJet does today and what it might do tomorrow when it comes to that computer software licensing? Well, Your Honor, the mark is used on the software, and NetJet continues to license that software, and the software is evolving throughout the years. Now we have the online portal. We have customers that access it directly and provide their own flight reservations themselves. Because of that, NetJet continues to offer a software good, you know, a software that's protected within the confines of the description and the registration, and the services that NetJet offers are relevant to the likelihood of confusion analysis, even with the registration, because there are reasons why consumers can be confused. If someone in the future is interested in licensing the IntelliJet software or one of NetJet's customers is looking for the online IntelliJet portal, they're going to type IntelliJet into Google, and they're going to pull up the defendant's website, presumably, among other things, and that's one reason why there is a likelihood of confusion, and one of the factual issues that we believe is in the light most favorable to the plaintiff appellant, you know, it should be resolved in our favor and should have prevented a summary judgment decision. Of course, there are other factors that we do feel were not properly considered by the district court. Those include the severity of the marks. I mean, one of the most important factors, you know, as this court itself said in prior cases, a case called Daddy's, and the marks are virtually identical, and it's identical in many circumstances by the defendant, and we feel that the district court didn't give that sufficient weight. The district court also really failed to consider the expansion of the product line and also failed to give much consideration to the defendant's intent in selecting the mark. Well, what's the evidence that there's going to be a big expansion of this product line when it comes to licensing this software? Well, Your Honor, NetJets has grown throughout the years. They've added additional subsidiaries that focus on different types of private jet aviation services. But I'm talking about, that's why I asked my prior question. I'm focused on the market of licensing the software as opposed to the private jet service.  Is there going to be a lot of licensing of this software in the future? Well, the fact that it continues to be licensed today... But that doesn't suggest growth. That just suggests status quo. Well, I think that the evolution of the software, and now that it's available online, demonstrates that the company is moving into the future, and as the world becomes more software-focused, it will continue to evolve as well. This is Judge Strange. I'm struggling a little bit with the conceptual argument here because I think what Judge Sutton is getting to is whether you can consider the IntelliJet software as part of the services that NetJet provides on the whole so that you get to compare it to IntelliJet Group's overall services. Doesn't that bring us back to the N. Ray Walker TTAB case that talks in terms of certain items as being tools that a company uses as opposed to the service itself? Doesn't that concept impact what you get to compare to when you're trying to determine whether there's a likelihood of confusion? Well, Your Honor, I believe that to answer your question, we first addressed the existence of common law service mark rights. As you can see in our brief, the NetJet company uses the IntelliJet mark extensively. They boast about the IntelliJet software and what it does for all of its customers. It's highly touted. It is published. It is discussed. But the question is, in using it that way, is it like a separate service? Is it a separate item that you are marketing and selling that could get confused with IntelliJet? Or is it merely an internal tool that you use in rendering what is actually the service that you render and make available to the public? And tell me if I'm missing it conceptually, but it seems to me that that's a distinction that impacts what you get to compare to. And I believe that was Judge Sutton's question, and he's free to correct me if I'm wrong. Your Honor, we believe that it is a separate item. NetJet's offered fractional aircraft services prior to having the IntelliJet software, and so it's not something that makes it possible for NetJet to do what it does. NetJet could do what it does without the software, but the software is such an amazing thing that allows things to be efficient, safe, allows the planes to be on time. And the fact that it has been licensed to other entities, including the NetJet Middle East entity, which is not where it was actually licensed to a company we call NAS, which was part of the NetJet Middle East franchise, and that company was not under the NetJet's umbrella, and the fact that they were able to license that software... Counsel, this is Judge Sutton. I thought the testimony at one point said, you know, one of your clients, maybe it was a 30B6 deposition, but the question was, well, might you license this to GE, for example? And the answer was, no, never. This is, like, the most important trade secret we have. So if you're not licensed, if there's no prospect of licensing the software, that seems problematic in terms of the size of the market and likelihood of confusion with other players in the market. Well, we have licensed it to an outside entity, and two outside entities in the prior oral argument we had in this case. I know we discussed the Marquis Jet license, and then there's the NetJet Middle East related license. Our deponent that talked about licensing of the NetJet, of the TeleJet software, when he discussed was it licensed externally, he wasn't being asked to make a distinction between a company, a franchise that bears the NetJet's name, and a company that's within the NetJet's umbrella. The evidence in this case... Counsel, this is Judge Boggs presiding. This last discussion has taken us a good bit past your time. Unless my colleagues want to pursue it further, perhaps we can wait for rebuttal. Do they wish to pursue it any further? Not Judge Sutton. No, not Judge Stranch. All right, okay. If you're agreeing not, you'll have your remaining time for rebuttal, Counsel. Thank you. Hi, if it may please the Court, this is Mary True, and I represent the defendant Appley Intelligence Group in this appeal. Understanding, I was certainly sympathizing with Judge Stranch's question as to how does all this work together, and I think it's very important for going into the specific questions about 1064 and those limitations to understand the overarching statutory scheme of the Lanham Act, because otherwise we go down into rat holes that aren't very productive. The Lanham Act sets up an administrative scheme that governs the registration and the maintenance of trademarks by the USPTO, and that's in Subchapter 1, which includes Sections 1051, 1064, and 1065 that we've been discussing. This is all overlaid by a system of judicial review that kicks in when a trademark owner seeks to enforce or defend its registration in an infringement action, which is what we have here under Section 1114. That system, the judicial overlay, is contained in Subchapter 3 of the Lanham Act, which includes Sections 1114, 15, 16, and 19. These sections all work together. If we analyze how they work together, we can see how it is that the district court reached its decision that registration was subject to cancellation. When NETJETS filed this action for trademark infringement under Section 1114, and it was seeking an injunction under 1116, which is far more power than the PTO has, it put its IntelliJET registration issue, and this, Judge Sutton, addresses your question of what is the role of incontestability here. It's an evidentiary issue. Under the first part of Section 1115, when they put their IntelliJET registration at issue, it is either prima facie evidence of the validity of the registered mark, or if the mark is incontestable, it is conclusive evidence of NETJETS' exclusive right to use the mark. And that's important. And then at that point, the burden will shift to the defendant if they want to challenge the validity of the registration under the defenses that are set forth in 1115. And that's what we did. The court reviewed... Counsel, one thing I wanted to just ask about in terms of the letter briefs, how do you pitch your best argument, your best case, when it comes to the idea that 1119 gives federal courts more power than 1164 in challenging the validity of a mark? Do you have a best case? What would you hang your hat on on that one? 1064 only applies to cancellation actions filed in the TTAB. The court determines the power to registration. Under 1119... I'm asking what's your best case. Best case. I understand your argument. What's the best case supporting it? Oh, the best case supporting it. Well, that would be... Well, the Procker and Gamble case was one thing, the Judge LaValle. Also, the KP Permanent Makeup where it says... In the Judge LaValle case, I thought he assumed away the issue by finding 1064 met. No. No, those were actually registered. And they were actually supposed to be incontestable, and he then canceled them because there was no use. Because he found there was no use. The ultimate determination of whether a mark is incontestable is under... I'm not asking an incontestability question right now. I'm asking a 1064 versus 1119 question with respect to the void ab initio point. If the registration isn't incontestable, then the court looks at 1115A defenses, and that says that if it's void ab initio, that's a fatal effect, and under section 1119, the court can cancel it. I mean, that's the way the system works. And there is nothing that says that... There is no explicit holding in Park and Ply or anywhere else or any other case that says that the district courts are expressly bound by the restrictions of 1064. It's a totally different scheme. Well, what about the Fourth Circuit Shakespeare Company case that, by analogy, would suggest that 1119 is limited by other related subsections, which is 1064? Why doesn't that undercut your argument? Because that case is so contrary to the established law that the Congress amended the Atlanta Act in 1999 to specifically include in the issue in that case was functionality as a grounds to cancel. But ultimately, wasn't functionality the only amendment that was made? But it was also included as a defense to a civil suit under 1115B. So that certainly shows that the court is not trying to consider 1064 as controlling on the court. They also included the functionality defense in 1115B as one of those defenses. So it's not... Shakespeare, the Sylstar case, is just bad law. I guess then we're back to Judge Sutton's core question, then, what is the best law for you? Do you think it's Procter and Gamble? The best law is supporting... The best law is supporting... I guess I'm just not quite sure of the question. If you want to talk about whether there is Section 1119's power, it is found in Section 1115 and not in 1064. But isn't 1115 just about challenging incontestability? No, no, no, no, no, no, no. No, if it's not incontestable and you go to 1115A, which allows a mark to be challenged on any grounds, any defect, and void ab initio is a fatal defect under... I mean, Section 115A says, it shall not preclude a person from proving any legal or equitable defense or defect, including those set forth in Section B. But Section A goes, if the mark is void, then that's a defense, and the court under 1119 has the power to cancel the registration. Well, let's just say... This is Judge Sutton. Let's just say, for the sake of argument, you're wrong. And the district court was wrong on the void ab initio. What that means, as I understand it, under Sixth Circuit law, is we're going to... We can just, for the sake of argument, call it incontestable. What that means on the likelihood of confusion, which is the key point, is we have to assume it's a strong mark. If we assume it's a strong mark and we look at the likelihood of confusion analysis, does that mean you lose? No. No, absolutely not. Go ahead. Explain why. The point with likelihood of confusion is that they are not using the mark on software. And so, therefore, it's not a strong mark for use on software. All they have been doing is, by their own admissions, they have been using it as a tool, as something to promote NetJet services. But as Judge Strand noted, in the N. Ray Walker decision, that doesn't mean that they have been using it as a mark. It's very commercially weak. And incontestability doesn't necessarily go to strength of the mark. The mark is partially quite weak because of their failure to use it openly and notoriously. In fact... I thought there was case law in the Sixth Circuit that said if, for the sake of argument, a mark is incontestable, that means we have to treat it as strong. I wouldn't think it necessarily follows you lose on likelihood of confusion, but that's why I was asking. There's quite a few factors, and this is your opportunity to explain how they work, even if we treat the mark as strong. Well, there's conceptual strength and there's commercial strength. And the incontestability may go to the conceptual strength of the mark, but it doesn't go to the commercial strength of the mark. The commercial strength of the mark has to be shown through the extent of use and consumer recognition. And certainly all the... And if you look at all the rest of the precious factors, there is no likelihood of confusion for a software product, which is what this registration is for, between that and what the defendant is using the intelligent mark on, which is brokerage services for used aircraft. Well, what about the two factors that the district court did not consider? The similarity of the marks and the defendant's intent. I think Daddy's Junkie Music Stores says that the similarity, in particular, is a strong factor. It should have considerable weight. And it seems to me these marks are spelled, pronounced. They appear the same, even although intelligent groups use a little different stylized version. They're basically the same. Why wouldn't that factor favor NetJets? Yes, the marks look... Well, they sound and are pronounced the same. The presentation to the public is certainly different. But again, that is only one factor, and it is certainly not the dispositive factor by any means. Well, what about the defendant's intent? Is it clear that NetJets was aware of this? I mean, that IntelliJet was aware of the trademark and that it made a play on the name of that software that indicates that there's knowledge of the software itself. Why doesn't that also favor NetJets, their intent? Because I think that's not quite consistent with the record. Mr. Spivak had determined the name IntelliJet for his used brokerage business. He did a search. He saw that there were a number of registrations of the word IntelliJet for a number of different things, including this software service. Nobody in the industry, in the relevant industry in which Mr. Spivak operates, or in the private aviation industry. No third parties indicated they had any recognition or had ever heard of the IntelliJet software. So in that case, there is... Well, actual confusion. Mr. Spivak wasn't selling the software. He wasn't selling the software. Actual confusion we know is not the key. What about the fact that IntelliJet refers to its own software by, shall we say, a derogatory name that clearly indicates knowledge of the software? Why wouldn't that give us another factor, the defendant's intent to traffic on the public knowledge and awareness of the software? Your Honor, with all due respect, IntelliJet's use of that word to describe this software is even more internal than NetJet's use of its IntelliJet software. This was nothing that was ever made available to the public. It had nothing to do with running... It was just simply... It was a sales... Sure, but we aren't talking about what they said to the public. We're talking about the factor that looks to the defendant's intent in selecting the mark. But they had already selected the IntelliJet mark to run their operation long before they started using... Mr. Spivak said that that had nothing to do with IntelliJet. He's not selling software. This was an internal system. He had already selected the term IntelliJet for his business without regard to... And it just simply had nothing to do with NetJet. And there's no evidence that it did. They had this software. They called it that. They called it amongst the three or four salespeople, and that was it. They weren't trying to make fun of IntelliJet. There's no... of the IntelliJet software or make any kind of play on NetJet at all. There's no evidence of that. Counsel, this is Judge Boggs. I sort of have a logical question as to the procedural posture. Just by hypothesis, if we were to disagree with you and agree with the other side that the district court's grounds for cancellation under 1064 was in error, would you still be able on remand to attack the registration under, for example, abandonment as we had indicated in our original opinion? Yes, Your Honor, we would. The grounds were not under 1064, though. The grounds were under, you know, 1115A. Well, I know that's what the district court did. I said by hypothesis, if we disagree with that, is the case over or indeed on remand? Could you then proceed to litigate under abandonment? I just wanted to get your confirmation or disagreement that I was understanding the procedural posture correctly. Yes, we could go forward on an abandonment case. I also think the case... That's fine. Okay. Do my colleagues have further questions? This is Judge Sutton. I don't have any more. Okay. All right, we let the other side run just a little over. If you want to take 30 seconds to wrap up, you can have it. Your time's up. All right, are you finished? All right. You have two minutes for rebuttal, Ms. Marsh. Yes, this is Ms. Marsh again. I wanted to address the defendant's counsel statement about 1064 v. 1115. Ms. True mentioned that it would be proper to cancel under 1115A, and in regards to what we set forth in our letter brief, we would just like to say again that that's not a permissible ground to cancel. I believe that the District Court of Colorado might have put it the best way. There's a paragraph excerpted in our letter brief, but they did talk about how invalidity and cancellation are distinct but related concepts, and again, 1064 is the grounds under which you can cancel. 1115 is defenses and defects, and they're not the same vehicle, and you can't use either one to achieve the same result. Counsel, this is Judge Boggs. Do you agree with the answer from the other side that even if we agreed with you on the 1064 point and reversed on that point, they would still be able to press the point of there's a genuine issue of material fact as to abandonment? Yes, Your Honor. We agree that if you were to find the District Court erred in reaching a void at an issue decision under 1064, that the other side could still pursue abandonment, but it would go to a jury at the District Court. Correct, yes. It's a genuine issue. Okay, thank you. I'm fine. What else do you have to tell us? Well, I did want to clarify something about the common law rights versus the rights demonstrated in the intelligent registration. Ms. True stated, to Your Honors, that NHS is using the intelligent mark to quote-unquote promote services, and we believe that that is precisely why the mark is also protectable at common law in connection with NHS services. The mark is used to distinguish those services and the quality of services that NHS offers. And what's more is that at common law, when we're considering services, the likelihood of confusion analysis weighs even more in NHS's favor because the services that NHS offers overlap with those of the defendant, and the likelihood of expansion of the product line also becomes a much stronger factor in favor of likelihood of confusion. Okay, counsel, thank you. I think your time has expired, unless my colleagues have questions. If not, thank you. Sorry. I'm sorry, I was saying I do not have a question. Thank you, Judge.